Ladies and gentlemen, we'll hear United States v. Menyweather. Counsel? May it please the Court, my name is Nicholas Marsh. I'm a trial attorney with the United States Department of Justice, Criminal Division, Public Integrity Section. And I'm here today on behalf of the appellant in this matter, the United States. Regrettably, Your Honors, we're here again. This is the third appeal in this matter. Each appeal is from the sentencing decision by the district court judge in this matter, Judge Manuel Real. And this third time, just as the first time and just as the second time, Judge Real has downwardly departed from the defendant Ms. Menyweather's sentence in a way that the government contends is unexplained, unjustified, and simply unwarranted, given the facts of the case. Very briefly, Your Honors, we're here because of conduct relating to Ms. Menyweather. Very briefly, she was an employee for the United States Attorney's Office for the Central District of California during a period roughly from 1997 through 2000. Also, I think we're all pretty familiar with the facts. Yes, Your Honor. The district court did make an effort, at least, to explain itself. It didn't say, oh, gee, this lousy Ninth Circuit, we're not even going to try. I understand that you disagree with the adequacy of the explanation. But I'm a little puzzled that you think that there isn't an explanation. Yes, Your Honor. In the second appeal, this Court specifically sent this case back with an explanation.  And it's the government's position that reading the third sentence from Ms. Menyweather that Judge Reel imposed, the justification relates to the basis and not to the extent, that without conceding the sufficiency of that, the government does admit that there is a much more detailed statement than what was done in either the first or the second sentencing. But in particular, the Court will note that in paragraph 1 of the conclusions of law, excerpt of record 228, the Court notes that there are a unique combination of factors justifying departure. And the Court doesn't. Is the thing that's on Maria Stratton Federal Public Defender Stationery? Your Honor, it is true that it is the exact proposed findings of fact and conclusions of law submitted by the public defender's office. We brought that word proposed, I think. Yes, Your Honor, that's correct. Is there anything wrong with that, to take the proposal of a litigant if the judge agrees with that? Not inherently so. I've never seen it in a criminal case. You see it in civil cases, though there are a lot of critical remarks in the appellate decisions. I've never seen it in a criminal case before myself. Is this common in some districts? Your Honor, I regret to say that I don't have the experience to know whether or not it is common. It certainly, from the attorneys who were before the Court during these sentencings, I believe the attorneys did find it uncomfortable. But that's just pure speculation at this point. I would like to turn the Court's attention very briefly to one part of the excerpt of record with respect to this. Before you do that, on pages 228, 229, and 230 of the excerpts, there's a listing of a number of different cases. And in each case, the Court refers to the exact amount of the departures in those cases. Why isn't that an attempt to justify the extent or an explanation of the extent? Here's somebody who got 91 months downward, and here's someone who got a four-year departure, and I'm matching to that. What's wrong with that? How else is the judge supposed to figure out how long a departure is warranted, if one is warranted at all? Well, Your Honor, the government submits that these, that the cases are cited in an effort by the judge to justify the basis, not the extent, and that the only place where the extent is justified is in paragraph 5, where the court, where the judge very summarily says the court finds that a departure of eight levels is merited based upon a combination of the above facts. That's a pretty cramped reading of what the judge did. Isn't it usual that we give the district court the benefit of the doubt that it's correct? For example, if a judge doesn't say I lack discretion, we'll assume that the judge knew that he or she had it. Here the judge is saying they've asked me to explain the extent, and here's my best shot. So why shouldn't we give him the benefit of the doubt that that's at least what he's doing? Again, I understand you don't agree with the, on the merits, but just as far as the explanation is concerned. Yes, Judge Graber, and I would just point out that from, it is a less fulsome explanation than other explanations that this court has deemed insufficient. And I would point, in Siriatam, the en banc decision in Working 1, which was a situation in which the court said, and I quote, the district court offered virtually no explanation for how it arrived at this decision to depart downward by 20 levels. Why 21? Why not 11 or 15? Unquote. And from the government's perspective, a very similar thing has happened here, that even if one were to assume that the discussion in the judge's third opinion is, relates only to extent and is not an attempt to justify the basis, the government submits that there's still no explanation of how the eight levels was, the eight level departure, the specific departure was appropriate, much less the sentence that was imposed. Counsel? Yes, sir. My understanding at the argument before the United States Supreme Court on Booker and Fanfan, I'm sure you're familiar with those cases. Yes, Your Honor. That the first comment or question from the court came from Justice Scalia, who said to counsel, assume that we are going to hold the federal sentencing guidelines to be unconstitutional based on Blakely. What does that do to your argument? I ask you the same question. And, Your Honor, I'm unfortunately, the answer is, it depends. And it depends on the specific terms in which the Supreme Court acts. Obviously, the Supreme Court is going to do something. The one you say is yes. Well, let's assume that they say that the guidelines are unconstitutional in the sense that they mandate the guidelines being followed, that they may be aspirational from this point forward, but they're no longer mandatory. Where does that leave the government's position in this case? The government's position is still that there were errors below. I would just point out that it would depend on, for instance, are the guidelines going to be held unconstitutional but severable in some degree. In the situation that they are severable, the government submits that this is a type of case that does not raise a pure Blakely issue, because what happened at the trial court level, the defendant admitted the facts relevant to this issue. The defendant stipulated to an offense level, stipulated to a loss amount, and that what we're talking about is going down from the maximum level, which under a pure Blakely analysis wouldn't cause a Sixth Amendment issue. Counsel, I had not seen a Blakely issue here because the judge didn't step up the sentence based on anything that might have been given to a jury. But Judge Hawkins' question makes me wonder if I missed an issue. Do you think, is there any reason why we should wait for Fan-Fan and Booker? Your Honor, the government would defer to the panel as to whether it wants to wait or not. It's the government's position that even if Booker and Fan-Fan do hold unconstitutional guidelines and throw it all out and return to indiscriminate sentencing, it doesn't affect the errors that the government submits were made at the trial court level. Did any of the parties ask Fan-Fan or Booker for the court to leave it the way it was before November 1, 1987? The judge could sentence to anything he wanted from zero to the max? Your Honor, I believe one of the government's positions was that to the extent that there are problems with the guidelines, that the entire system would probably need to be thrown out. The specifics of that argument I don't know. So that is a conceivable result? I believe so, Your Honor. And you might get one judge who would give this lady a get-out-of-jail-free card and another one would give her 10, 20 years, whatever the max is? It's possible, Your Honor. And the government would submit that that is yet another reason why judicial reassignment upon remand, if there is one, would be appropriate. I'd like to reserve the rest of my time. Wait, wait, wait. Yes, Your Honor. I'm sorry. I don't understand that. The fact that the guidelines might be unconstitutional is a reason to assign it to a different judge? How does that follow? Judge Graber, under the Montrose factors that this Court has for reassignment of a judicial reassignment of sentencing on remand, the two first factors, one, whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind the previously expressed views or findings that are that criteria comes into play. It's the second criteria that in specific, the whether reassignment is advisable to preserve the appearance of justice. The government's position is that in this case, irrespective of where the guidelines are, the court has, the district court has taken a very specific position that the government believes is improper and it should be reassigned. And I'm actually officially out of time now, but if the Court has any further questions, I'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, and may it please the Court. I'm Elizabeth Newman, representing the appellee, Dorothy Manyweather. Your Honors, the district court wrote ten pages of findings of fact and conclusions of law. You mean the district court? Adopted. Wrote. Yes, and actually to address your earlier question. Are there other courts that do that? I've never seen it in a criminal case. To adopt proposed findings of fact? To just have a party submit them and sign them? Yes, Your Honor. I've seen it many times in suppression issues, for example. I didn't ask you about suppression now. I asked about sentencing. The sentencing issues, I think, are becoming more widely done that way, Your Honor, because of the Protect Act and the requirement. I've never seen it in suppression either, actually. Oh, I'm sorry, Your Honor, but I have seen proposed findings of fact and conclusions of law submitted by the government. Where is your practice? I'm sorry? Is your practice all Los Angeles? My practice is in the Central District, Your Honor. So it's something they do in the Central District? Yes, Your Honor. Let me ask you something. When I read the judge's original decision, and I thought his original decision was important because he never would hear anyone argue about it in his subsequent hearings, and he never changed it. One of the things that really impressed him was that right now the girl lives in a gated community with her mother in a nice house or a nice apartment, and if her mother went to jail she'd wind up with some relatives who don't live in nearly as good circumstances. Is that right? I'm not sure the court drew that specific conclusion, Your Honor. I think you used those words. The facts that he found, I believe, were, as you state them, that she lived in a gated apartment in a secure place. Whereas her grandmother and great-aunt lived in the projects. I was thinking about that, and I was thinking, how does this secretary on $32,000 a year in a very high-cost city, Los Angeles, live in a gated community except maybe on the third to a half a million dollars that she stole? Your Honor, there's no evidence in the record about her finances being in any way improper. She's now earning as far as we know. We know what she earned as secretary. It was $32,000 a year. Yes. And we know what she stole. It was somewhere between $340,000 and $450,000 a year, as I recall. Yes. So we know something about her finances. Yes, Your Honor. Her current finances, we also know something about. She's earning approximately $340 a week, I believe, through a clerical job, and she received some SSI benefits on behalf of her daughter. I don't know how familiar the Court is with Los Angeles, but the fact that this gated community is very close to the projects in Watts, which is also in the record, suggests that it's not the expensive, luxurious accommodations that the Court may be thinking about when it thinks about gated suburban communities with various amenities. But to go to the government's argument, Your Honors, about the extent of the departure, the standard of review here is abuse of discretion, and that means that as long as the district court's explanation of the extent of the departure is not unreasonable, the sentence has to be affirmed, and that's what this Court said on Bonk in the Sablon case. And courts have departed upward and downward by that amount and more, sometimes based on just one of the factors here, 13 levels down in Galante under just family circumstances, 10 levels down on family circumstances in Johnson, 12 to 15 levels down, it's a little hard to tell, but looking at the guidelines table, it looks that way, in Alba, 11 levels down in Green, even though one factor there was impermissible, 9 or 10 levels down in Sclamo. So the district court's very, very full explanation in this case, Your Honor, should cause this Court to affirm there's nothing, there's no abuse of discretion here. Which judgment? I'm a little confused in the excerpts because of all the times we've sent it back. The judgment we're reviewing, which page is that in the excerpts? The judgment you're reviewing, Your Honor, begins, well, begins on page 220, the findings of fact and conclusions of lie. No, no, I just asked for the judgment. I was looking for the usual, the purple form, you know. This is the findings of fact and conclusions of law, and I want to look at the purple form, the judgment. The judgment and commitment form? That's right. I'm not sure it's in the record, Your Honor. I didn't see it there, and there was something I really wanted to check. The law requires that Comora get paid first, and I remember the United States wasn't concerned with that in an earlier argument. Yes. And, of course, the defense wasn't concerned about it, and it just didn't happen. And I want to read the judgment and make sure Comora gets paid first under it. Is it there? I don't see it, Your Honor. It's a government excerpt, but I tabbed it for my own purposes, and I don't see it there. We would certainly be happy to fax it to the court if that's a concern of the court, and I do believe that in the ---- It's a statute that says it has to be that way, and every time I look at the judgment it's not there, even though we keep telling the judge to put it there. I think ---- Your Honor, I'm sorry. I only see a minute order here. I believe that the court did say in its oral ruling that ---- He did in the oral ruling, but I didn't see it in the judgment. We would be happy to fax the J&C to the court if that will alleviate one of or incite one of the court's concerns. I don't know if it will alleviate it or not. Aside from these other cases, and I don't know if they're any good or not because I have to carefully study the facts and see how analogous they are, why 8 levels? The only reason I could see for 8 levels is that she can walk if she gets 8 levels. Why 8 as opposed to 2 or 4 or 6 or 7, anything else? Well, Your Honor, this Court ---- let me answer your question in two ways, Your Honor. First of all, the court, although it never said I'm departing 8 levels, 3 based on this, 2 based on that, 6 based on a combination or whatever it was. I used to depart. That's what I do. I'd say, well, this is really more comparable to this, which would be 2 levels less. Well, I believe, Your Honor, that the court essentially did say things like that. It said it compared the facts of this case to other cases in which departures had been affirmed by the court and implicitly departed by comparison to those cases. And furthermore, Your Honor, this Court ---- I think implicitly is the operative word because I can't find much explicit comparison. All there is is the parentheticals. Yes, Your Honor, essentially saying or by ---- essentially saying the court did that here so I can do this here or the district ---- the court of appeals affirmed that here so I can impose this here. And also, Your Honor, this Court has never really required that a district court stuff its ruling with the kind of detail that the government seems to be insisting on. In the Green case, for example, the second one, I mean, I think we quoted that. And the court just talked about post-defense rehabilitation and, in fact, also about a departure ground that wasn't permissible at all and imposed an 11-level departure, which this court upheld, saying that there's no showing that the court would have imposed a different sentence had the departure ---- And saying that the departure was adequately supported on a fairly bare reasoning about why 11 levels ---- Now, under the PROTECT Act, we have to review de novo. So we're not just deciding whether the district court abused its discretion. We're deciding if we would do it. Your Honor, I think that that's incorrect with respect. It's incorrect in several ways. First of all, as to the extent of the departure, this Court has said in Barragan-Espinosa that the standard of review is abuse of discretion as to the extent of departure. Is that post-PROTECT Act? Yes. Yes, it is, Your Honor. And what that means is the Court reaffirmed in Barragan-Espinosa that that means that as long as the district court's explanation of the extent of the departure is not unreasonable, the extent of the departure has to be affirmed. And as to the basis of the departure, I think that's where the de novo standard might come in, although we argue in our briefs that even there the standard of review should be abuse of discretion. But I would like to address the Court's concern that it must substitute its own view for the view of the district court, even as to the basis of the departure, because we would submit that that's not the case. And that's not the case because it's the district court that's the sentencing court, and the district court is the one that gets a sense of the defendant who has a chance to allocute. And so it's the district court that they're going to be able to do that. I saw just how much allocution there was. Zero. Your Honor. And I saw just how much argument there was. He didn't even let the government talk. He did, actually, Your Honor. When they requested an opportunity to be heard, they got an opportunity to be heard. But as to the extent of the allocution, you're right. She didn't want to say anything, but he still had a sense of her. Let me ask you about something here. See, my impression of this is this is the sort of thing that generates mandatory minimums from Congress, the sort of contempt for the sentencing guidelines is what it looks like to me. I read a couple of statements here. Paragraph 3, seldom in the court's experience has so profound a disability so clearly contributed to the commission of the offense. I can't see any disability at all. It looks like getting her fiancé shot was a terrible experience. She didn't start offending after that. There was two years in between when it looked like her life turned around and she started doing great. As I remember, she went to school. She got a degree. She got this great job with the U.S. Attorney's Office. All these positive developments. And then it says, the facts and circumstances show unusual traumatic circumstances for this mother and child and an unusual relationship between the two. This mother has been the sole parent caring for the child at home and after school. I can't see anything different from maybe half the kids that my kids grew up with who had single mothers at home. What's so special? Your Honor, let me address the diminished capacity mental condition issue first. Your Honor has said, I don't see that there's any disability at all. But Dr. Barbara Court Counter said that there was, and that's evidence that the district court was entitled to credit. And there's no opposing evidence. Before the first sentencing, the government never attempted to cross-examine Dr. Counter, although the district court did permit it to do so at the second, at the first resentencing. The district court, I'm sorry, the government never attempted to have. We can decide if we want to that we just don't buy Dr. Counter's theory, can't we? No, Your Honor. With respect, I don't think you can unless you are concluding that the district court was clearly erroneous in crediting her psychological views in a case in which there's no controverting evidence, no controverting evidence as to her qualifications, her methodology, or her conclusions. The government had an opportunity before the first sentencing to do what it needed to do, to do what it thought it needed to do, to cross-examine her, to have Ms. Manyweather submit to its own expert, Often in a personal injury case, when an expert is just so far out in Never Never Land that the lawyer on the other side is confident the jury won't buy it, the lawyer just lets the expert get off the stand and lets the jury reject it. Your Honor, that's the risk that the government took here as it continued to admit and acknowledge during the subsequent proceedings. In the second sentencing, I believe Judge Reel asked the government attorney, were you satisfied with what you had to present to the court when you came in here for the initial sentencing? I think it's on excerpts page 125. And the government attorney said, yes, we were, Your Honor. Now, the government took that risk. It didn't litigate it the way that it might have wished afterwards. It had done so. Are you saying that we are bound to accept Dr. Counter's testimony? Yes, Your Honor, unless you're finding that the district court's credit of Dr. Counter was clearly erroneous and that there was not a preponderance of the evidence under a clearly erroneous standard to credit her opinions and beliefs in a case when there is nothing, nothing that controverts her. Got it. Well, I better let you go because I took you way over your time, unless my colleagues have further questions. No, I don't. Thank you, counsel. Thank you, Your Honor. Very briefly, Your Honors, with respect to the extent of the departure, the government submits that the court may find guidance in the following cases, the Matthews case from 1997, Working I, the first Green case, and the Donahue case from 1995, all of which were cases in which there was an explanation, but the court indicated this court indicated those were insufficient, and the government submits that the explanation in this case is less fulsome than those. Do you agree that under Protect, the extent of departure is reviewed for an abuse of discretion? Yes, Your Honor, based on the precedent, not based on the Protect Act itself, but this court has ruled so. I would also point out that ---- Let me just ask you really quickly the question that Judge Kleinfeld raised earlier. Does the actual written judgment provide that Kimura is paid before restitution is paid to the United States? Your Honor, I noticed from the docket proceedings that there does not appear ---- there's not a reflection of that judgment in the docket. I can do more investigation to see if we have it, but according to the docket, it's not listed on the docket, and I personally have not seen it, but I will do investigation to determine that. I do know it is true, as Ms. Minnie Weathers' counsel pointed out, that it is a part of the judge's decision. If there are no further questions, thank you, Your Honor. Thank you, counsel. Minnie Weathers, U.S. v. Minnie Weathers, is submitted. And court is adjourned.
judges: Kleinfeld, Hawkins, Graber